**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROSA VALDES COMENDADOR,**<br><br>***Petitioner*,**<br>**v.**<br><br>**TODD BLANCHE,**<br>*United States Attorney General*;<br>**MARKWAYNE MULLIN,**<br>*Secretary of the United States Department of Homeland Security*;<br>**DAVID VENTURELLA,**<br>*Senior Official Performing the Duties of the Director of United States Immigration and Customs Enforcement*;<br>**JOEL GARCIA,**<br>*ICE Field Office Director for U.S. Immigration and Customs Enforcement*; **and**<br>**WARDEN OF THE ERO EL PASO EAST MONTANA,**<br><br>***Respondents*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-26-CV-00734-DCG** |

**<u>ORDER GRANTING PETITIONER'S MOTION IN PART</u>**

For the following reasons, the Court **GRANTS** "Petitioner's Emergency Motion to Enforce Order Granting Petition for Writ of Habeas Corpus" (ECF No. 12), as modified by "Petitioner's Notice of Release and Partial Withdrawal of Emergency Motion to Enforce Order Granting Petition for Writ of Habeas Corpus" (ECF No. 14), **IN PART**.

# I. BACKGROUND

## A. Petitioner's Initial Entry, Detention, and Release

Petitioner Rosa Valdes Comendador is a citizen of Cuba who first entered the United States on September 24, 2022.[1] Although immigration authorities detained her upon entry, they released her on recognizance the following day.[2]

## B. Petitioner's Re-Detention

On February 10, 2026—several years later—immigration authorities detained Petitioner pending proceedings to remove her from the United States.[3] The Government did so pursuant to 8 U.S.C. § 1225(b)(2),[4] which mandates detention of certain aliens who aren't yet subject to a final removal order.[5]

## C. The Petition and the Court's Release Order

On March 13, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus challenging the legality of her detention.[6] While the Petition was pending, a three-judge panel of the Fifth Circuit issued its opinion in *Sosnava Rodriguez*, which held that "the Government may detain

---

[1] Pet., ECF No. 1, at 5.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[2] *Id.*; 2022 Order Release Recognizance, ECF No. 1-4, at 2.

[3] Pet. at 6.

[4] Resp. Pet., ECF No. 3, at 1.

[5] 8 U.S.C. § 1225(b)(2)(A) (providing (with certain exceptions) that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for" removal proceedings (emphasis added)); *see generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

[6] *See generally* Pet.

aliens under Section 1225(b)(2)(A) for ninety days but no longer without a bond hearing."[7] Although the full Fifth Circuit vacated the panel's opinion and granted rehearing *en banc* a few days later,[8] the undersigned Judge opted to "continue to follow the panel decision as persuasive, non-binding authority."[9] By July 13, 2026, Respondents had been detaining Petitioner under § 1225(b)(2) for more than 90 days without affording her a bond hearing.[10] So, on that date, the Court issued an Order granting the Petition and directing Respondents to release Petitioner from custody (the "Release Order").[11]

The Release Order explicitly prohibited Respondents from "re-detain[ing] Petitioner under the authority of 8 U.S.C. § 1225(b)(2) unless they first successfully move[d] to modify" the Order.[12] The Court stated, however, that if Respondents ultimately issued a final removal order against Petitioner, they could lawfully re-detain her under 8 U.S.C. § 1231(a),[13] which

---

[7] *Sosnava Rodriguez v. Ortega*, 180 F.4th 702, 727–28 (5th Cir. 2026) [hereinafter *Sosnava Rodriguez Panel Op.*], *vacated*, 181 F.4th 608 (5th Cir. 2026) [hereinafter *Sosnava Rodriguez En Banc Reh'g Order*], *on reh'g en banc sub nom.*, *Sosnava Rodriguez v. Vergara*, --- F. 4th ----, 2026 WL 3181188 (5th Cir. 2026) (en banc) [hereinafter *Sosnava Rodriguez En Banc Op.*].

[8] *Sosnava Rodriguez En Banc Reh'g Order*, 181 F.4th at 609.

[9] Release Order, ECF No. 8, at 3. *But see infra* Section I.H (explaining that the full court later rejected the three-judge panel's reasoning).

[10] Release Order at 4; *see also supra* note 3 and accompanying text (noting that Respondents had been detaining Petitioner since February 10, 2026).

[11] Release Order at 4–5.

[12] *Id.* at 6.

[13] *Id.* at 6 n.18 ("Nothing in this Order prohibits the Government from re-detaining Petitioner under 8 U.S.C. . . . [§] 1231(a)(2)(A)[] . . . .").

mandates that an alien subject to a final removal order be detained for at least 90 days (unless the Government removes the alien from the United States before that 90-day period expires).[14]

Respondents timely released Petitioner as ordered,[15] and the Court issued its Final Judgment closing the case on August 5, 2026.[16] Respondents never appealed the Final Judgment, and their deadline to do so expired on October 5, 2026.[17] Nor have Respondents ever filed a formal motion to modify the Release Order and lift the prohibition against re-detaining Petitioner under 8 U.S.C. § 1225(b)(2).[18]

---

[14] 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."); *id.* § 1231(a)(1)(B) (providing that "[t]he removal period begins," at the latest, on "[t]he date the order of removal becomes administratively final"); *id.* § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall detain* the alien." (emphasis added)); *id.* § 1231(a)(6) (specifying that certain aliens "may be detained beyond the removal period"). *But see generally Zadvydas v. Davis*, 533 U.S. 678 (2001) (reading limits into the Government's authority to detain aliens past the 90-day removal period under 8 U.S.C. § 1231(a)(6)).

The Release Order also did not "prohibit[] the Government from re-detaining Petitioner under 8 U.S.C. [§] 1226(c)," which mandates detention of certain criminal aliens. Release Order at 6 n.18; *see also* 8 U.S.C. § 1226(c). The record contains no indication that Petitioner is subject to that provision, however. *See, e.g.*, Emergency Mot., ECF No. 12, at 6 ("Petitioner has no criminal record and has never been arrested. Respondents have never contended otherwise." (citation omitted)). Thus, at least as far as the current record reveals, the only way Respondents may lawfully re-detain Petitioner is if (1) Petitioner becomes subject to a final removal order (thereby triggering detention under § 1231(a)), or (2) Respondents successfully move to lift the restrictions on re-detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2). Release Order at 6 & n.18.

[15] Status Report, ECF No. 10; 2026 Order Release Recognizance, ECF No. 10-1.

[16] Final J., ECF No. 11, at 2.

[17] *See* FED. R. APP. P. 4(a)(1)(B) (providing that in a civil case (such as this one), "[t]he notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is . . . a United States officer or employee sued in an official capacity" (as several of the Respondents are here)); FED. R. APP. P. 26(a)(1)(C) (providing that where an appellate deadline would otherwise fall on "a Saturday, Sunday, or legal holiday" (here, Sunday, October 4, 2026), the deadline automatically extends to "the end of the next day that is not a Saturday, Sunday, or legal holiday").

[18] *But see infra* note 63–64 and accompanying text (explaining that although Respondents didn't file a formal motion to modify the Release Order, they did ask for relief from that restriction in their Response to Petitioner's filings).

### D. Petitioner's Non-Final Removal Order

On September 9, 2026, an Immigration Judge ordered Petitioner's removal to Cuba.[19] Petitioner timely appealed the removal order to the Board of Immigration Appeals ("BIA") on October 8, 2026.[20] Under applicable agency regulations, when an alien timely appeals a removal order, it doesn't become final until the BIA dismisses the appeal.[21] As of the date of this Order, Petitioner's BIA appeal remains pending. Thus, her removal order is not yet final—and, as a consequence, Respondents cannot yet re-detain Petitioner under the Release Order's plain terms.[22]

### E. Petitioner's Re-Detention and Emergency Motion

Notably, however, the agency didn't log the October 8, 2026 appeal into its system until October 13, 2026.[23] Thus, as of the morning of October 13, 2026, Respondents erroneously believed that Petitioner failed to file an appeal by the applicable deadline—and, thus, that her removal order had become final.[24] Respondents therefore thought that they could lawfully re-detain Petitioner under the authority of 8 U.S.C. § *1231(a)* without violating the Court's prohibition against re-detaining Petitioner under § *1225(b)(2)(A)*.[25] So, when Petitioner

---

[19] Removal Order, ECF No. 12-1, at 4.

[20] Payment Receipt, ECF No 12-2, at 2; *see also* 8 C.F.R. § 1003.38(b) (specifying the applicable "filing deadlines for appeals . . . of Immigration Judge decisions"); Resp. Mot., ECF No. 16, at 1 (conceding that "Petitioner timely appealed her order of removal on October 8, 2026").

[21] 8 C.F.R. § 1241.1(a).

[22] *See supra* notes 12–14 and accompanying text.

[23] Resp. Mot. at 1 (conceding that the BIA "did not issue the filing receipt of the appeal until October 13, 2026").

[24] *Id.* at 1–2; *see also* 8 C.F.R. § 1241.1(c) (providing that a removal order becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

[25] Resp. Mot. at 1–2; *see also supra* notes 12–14 and accompanying text.

appeared for a scheduled check-in at the El Paso ICE Office on the morning of October 13, 2026, ICE took her back into custody.[26]

A few hours later, Petitioner filed the instant Emergency Motion to enforce the Release Order.[27] Among other relief, Petitioner asked the Court to:

(1) find that Respondents violated the Release Order by re-detaining her;

(2) order Respondents to release Petitioner immediately;

(3) "reaffirm that Respondents may not re-detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) unless they first successfully move to modify the [Release] Order, and that 8 U.S.C. § 1231(a)(2)(A) provides no basis for detention unless and until her order of removal becomes administratively final;" and

(4) "order Respondents to show cause within twenty[-]four hours why they should not be held in civil contempt for violating the [Release] Order."[28]

**F. Petitioner's Release**

Shortly after Petitioner filed that Motion, however, the agency realized its mistake and released Petitioner without judicial intervention.[29] In the course of correcting that error, however, the agency appears to have made several other errors in the process.

According to Petitioner's counsel, when the agency releases an alien who isn't yet subject to a final removal order (like Petitioner here), it ordinarily issues an "Order of Release on Recognizance" (Form I-220A).[30] For instance, the agency used that form when it initially

---

[26] Pet'r Decl., ECF No. 14-3, at 2.

[27] *See generally* Emergency Mot.

[28] *Id.* at 7–8.

[29] Resp. Mot. at 2–3; Pet'r Decl. at 3.

[30] Notice, ECF No. 14, at 2.

detained and released Petitioner in 2022,[31] as well as when it released Petitioner in July 2026 to comply with the Release Order.[32]

However, when the agency released Petitioner on October 13, 2026, it used a different form: an "Order *of Supervision*" ("OSUP") (Form I-220*B*).[33] The agency typically uses that form when it releases an alien who is subject to a final removal order and has completed the 90-day mandatory detention period under 8 U.S.C. § 1231(a)(2)(A).[34] As noted, Petitioner doesn't fall in that category.[35] The OSUP therefore contains terms and information that don't apply to her. Most notably, it erroneously indicates that she is subject to a final removal order.[36]

The OSUP that Respondents gave Petitioner was also procedurally irregular for an additional reason: it was missing the fourth page of the five-page document.[37] Although Respondents' counsel sent Petitioner's attorney her own copy of Petitioner's OSUP on October 14, 2026, the fourth page was completely redacted; it consists entirely of a page-long black rectangle with "Page 4 of 5" in the footer.[38] Because Pages 1 and 3 of the OSUP identify release

---

[31] 2022 Order Release Recognizance at 2; *see also supra* note 2 and accompanying text.

[32] 2026 Order Release Recognizance; *see also supra* note 15 and accompanying text.

[33] OSUP, ECF No. 14-1, at 2–5.

[34] *See* 8 U.S.C. § 1231(a)(6) (providing that although certain aliens "may be detained beyond the [90-day] removal period," they may be released "subject to . . . terms of supervision"); 8 C.F.R. § 241.4 (governing the release of aliens after the 90-day removal period); *id.* § 241.5(a) ("An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision. . . . *The [agency] may issue Form I-220B, Order of Supervision*." (emphasis added)); *see also supra* notes 13–14 and accompanying text.

[35] *See supra* Section I.D.

[36] OSUP at 2 (writing "September 9, 2026" above "Date of *Final* Order" (emphasis added)).

[37] *See id.* at 4–5 (proceeding from "Page 3 of 5" to "Page 5 of 5"); *see also* Notice at 4.

[38] Notice at 4–5; *see also* Redacted OSUP, ECF No. 14-4, at 2.

conditions with which Petitioner must comply upon pain of "a fine, detention, or prosecution,"[39] Petitioner is concerned that the fourth page may contain additional release conditions—and, thus, that she "does not know the full terms of the supervision order she must now follow under threat of criminal penalty."[40]

Further compounding Petitioner's confusion, although Petitioner arrived at her October 13, 2026 check-in wearing an ankle monitor[41] (as her July 2026 Order of Release on Recognizance required),[42] agency employees removed her ankle monitor before releasing her that evening.[43] The OSUP, however, states that Petitioner is "subject to electronic monitoring"—and that any "[f]ailure to comply with" those electronic monitoring requirements "will result in a redetermination of [her] release conditions or [her] arrest and detention."[44] Petitioner thus fears that she'll get in trouble for failing to wear the ankle monitor that the agency took away from her.[45]

Besides the OSUP, the agency also gave Petitioner a document entitled "Warning for Failure to Comply with Terms of Supervised Release" (the "Warning").[46] Like the OSUP, the Warning erroneously indicates that Petitioner's removal order is final.[47] Petitioner is therefore

---

[39] OSUP at 2, 4.

[40] Notice at 5.

[41] Pet'r Decl. at 2; Notice at 3.

[42] 2026 Order Release Recognizance at 1; *see also supra* note 15 and accompanying text.

[43] Pet'r Decl. at 3; Notice at 5.

[44] OSUP at 2.

[45] Notice at 5.

[46] Warning, ECF No. 14-2, at 2.

[47] *See id.* ("Date Order Final | September 9, 2026").

concerned that, if those agency records aren't corrected between now and her next check-in with ICE, the same incident might recur—that is, an employee will review Petitioner's records, see the OSUP and Warning, mistakenly believe that Petitioner is subject to a final removal order, and once again re-detain her in violation of the Release Order.[48]

### G. Petitioner's Partial Withdrawal of the Emergency Motion and Request for Additional Relief

On October 14, 2026—the day after Petitioner filed the Emergency Motion—Petitioner filed a Notice informing the Court of the new developments recounted above.[49] She withdrew the portion of the Emergency Motion seeking Petitioner's release (which had become moot), as well as the portion asking the Court to order Respondents to show cause why the Court shouldn't hold them in civil contempt.[50] But she retained her request for:

(1) a judicial finding that her October 13, 2026 re-detention violated the Release Order—"or, at a minimum, that the detention was not authorized by 8 U.S.C. § 1231(a)(2)(A), § 1226(c), or any other statute permitted by the [Release] Order;"[51] and

(2) a "reaffirmation that Respondents may not re-detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) without first successfully moving to modify the [Release] Order, and that 8 U.S.C. § 1231(a)(2)(A) provides no basis for detention unless and until her removal order becomes administratively final."[52]

---

[48] Notice at 5.

[49] *See id.* at 1–5; *see also supra* Section I.F.

[50] Notice at 5; *see also supra* note 28 and accompanying text.

[51] Reply, ECF No. 17, at 9; *see also* Notice at 6.

[52] Notice at 6.

Additionally, because the release paperwork that Respondents gave Petitioner on October 13, 2026 erroneously treats Petitioner's removal order as though it was final,[53] Petitioner also added a new request for relief—an order directing Respondents to:

(3) correct their records to reflect that Petitioner's removal order is not yet final;

(4) withdraw the OSUP and Warning in favor of release conditions that are no more restrictive than those to which Petitioner was subject before October 13, 2026; and

(5) "notify Petitioner's counsel within twenty[-]four hours of any future detention of Petitioner, and to identify the statutory authority for that detention."[54]

The Court ordered Respondents to brief the remaining requests for relief by October 29, 2026.[55]

## H. The Fifth Circuit's *En Banc* Ruling in *Sosnava Rodriguez*

On October 23, 2026—before Respondents filed their response to Petitioner's filings—the Fifth Circuit issued its *en banc* ruling in *Sosnava Rodriguez*.[56] Whereas the panel opinion held that the Government may not detain aliens under § 1225(b)(2)(A) for more than 90 days without a bond hearing,[57] the *en banc* opinion reaches the contrary conclusion that aliens detained under § 1225(b)(2)(A) have no due-process right to a bond hearing.[58] The *en banc*

[53] *Id.*; *see also supra* Section I.F.

[54] Notice at 7–8.

[55] Order, ECF No. 15, at 2.

[56] *Sosnava Rodriguez En Banc Op.*, 2026 WL 3181188.

[57] *Sosnava Rodriguez Panel Op.*, 180 F.4th at 727–28; *see also supra* note 7 and accompanying text.

[58] *See generally Sosnava Rodriguez En Banc Op.*, 2026 WL 3181188.

opinion thereby undermines the reasoning underpinning the Release Order, which the Court based on the now-discredited panel opinion.[59]

## I. Respondents' Response

On October 29, 2026, Respondents timely responded to Petitioner's Emergency Motion as ordered.[60] Although they conceded that Petitioner was not yet subject to a final removal order, they insisted that ICE had acted in good faith on the mistaken belief that Petitioner failed to appeal her removal order by the applicable deadline.[61] Respondents maintained, however, that they hadn't violated the Release Order's prohibition against re-detaining Petitioner under 8 U.S.C. § *1225(b)(2)(A)* because they had purported to re-detain her under 8 U.S.C. § *1231(a)(2)(A)*.[62]

Citing the Fifth Circuit's intervening *en banc* ruling in *Sosnava Rodriguez*—which, as discussed, undercuts the Release Order's reasoning—Respondents also ask the Court not to reaffirm the Release Order's prohibition against re-detaining Petitioner under § 1225(b)(2)(A).[63]

---

[59] *See supra* Section I.C.

[60] Resp. Mot.; *see also supra* note 55 and accompanying text.

[61] Resp. Mot. at 1–2; *see also supra* Section I.E.

Petitioner appears to dispute that the agency acted in good faith. Pet'r Decl. at 2 (Petitioner's declaration under penalty of perjury that she showed the agency employees documentation reflecting that she filed a timely appeal, but the employees took those documents and tore them up in front of her); Reply at 4 (arguing that "[a]n agency that is shown proof of a pending appeal and destroys it instead of reading it has not acted on a reasonable mistaken belief"). Whether the agency acted in good faith is ultimately irrelevant to the Court's rulings below. *See infra* Section II.

[62] Resp. Mot. at 4; *see also supra* notes 12–14 and accompanying text.

[63] Resp. Mot. at 4–5; *see also supra* Section I.H.

However, Respondents haven't filed a freestanding motion asking the Court to modify the Release Order based on *Sosnava Rodriguez*.[64]

Notably, other than asserting generically that the Court "should deny any relief requested in Petitioner's [M]otion,"[65] Respondents didn't explicitly mention any of Petitioner's other requests for relief.[66] That is, Respondents failed to address her request that the Court order Respondents to withdraw the OSUP and Warning, correct their records to reflect that Petitioner's removal order isn't currently final, issue release conditions that are no more restrictive than those to which she was subject before October 13, 2026, and promptly notify Petitioner's counsel if and when they re-detain Petitioner in the future.[67]

## II. DISCUSSION

### A. Respondents Violated the Release Order by Re-Detaining Petitioner on October 13, 2026

The Court begins with Petitioner's request to "find that Respondents' re-detention of Petitioner on October 13, 2026 violated the [Release] Order"—"or, at a minimum, that the detention was not authorized by 8 U.S.C. § 1231(a)(2)(A), § 1226(c), or any other statute permitted by the Order."[68] As noted, Respondents dispute that they violated the Order.[69] According to Respondents, the Release Order only forbade them from "re-detain[ing] Petitioner

---

[64] *See* Resp. Mot. at 1 (captioning their filing as a "*Response* to Petitioner's Motion" rather than a motion in its own right (emphasis added)).

[65] *Id.* at 5–6.

[66] *See id.* at 1–6.

[67] *See id.*; *see also supra* note 54 and accompanying text.

[68] Reply at 9.

[69] Resp. Mot. at 4; *see also supra* note 62 and accompanying text.

under the authority of 8 U.S.C. § *1225(b)(2)(A)*,"[70] and they purported to re-detain Petitioner under 8 U.S.C. § *1231(a)(2)(A)*.[71]

Respondents' argument elevates semantics over substance. Respondents couldn't have re-detained Petitioner under § 1231(a)(2)(A) because she's not yet subject to a final removal order.[72] Thus, Respondents necessarily detained Petitioner under § 1225(b)(2)(A). And because the Release Order forbade Respondents from doing so, they violated the Release Order.

## B. The Release Order's Prohibition Against Re-Detaining Petitioner Under 8 U.S.C. § 1225(b)(2)(A) Remains in Effect

As for Petitioner's request to "reaffirm that Respondents may not re-detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) unless they first successfully move to modify the [Release] Order,"[73] the Release Order remains in effect, and it means what it says.[74] Although Respondents contend that "[t]he Court should not reaffirm its [Order] barring Petitioner's re-detention under 8 U.S.C. § 1225(b)(2)(A) as it stands in contradiction to the Fifth Circuit's subsequent decision in *Sosnava Rodriguez*,"[75] Respondents haven't filed a formal motion to modify the Release Order to lift that restriction.[76] That is a prerequisite to obtaining that relief

---

[70] Release Order at 6.

[71] Resp. Mot. at 4; *see also* Release Order at 6 n.18 ("Nothing in this Order prohibits the Government from re-detaining Petitioner under 8 U.S.C. . . . [§] 1231(a)(2)(A) . . . .").

[72] *See* 8 U.S.C. § 1231(a)(2)(A) (requiring the Government to "detain the alien" "*during the removal period*" (emphasis added)); *id.* § 1231(a)(1)(B) (providing that the removal period doesn't begin until "[t]he date the order of removal becomes administratively final" at the absolute earliest).

[73] *See* Notice at 7.

[74] Release Order at 6 ("Respondents may not re-detain Petitioner under the authority of 8 U.S.C. § 1225(b)(2)(A) unless they first successfully move to modify this Order.").

[75] Resp. Mot. at 5.

[76] *See supra* notes 18, 64, and accompanying text.

under both the Federal Rules of Civil Procedure[77] and the Release Order's plain terms.[78] Thus, at least for the time being, the Release Order remains in full effect.

The Court does not now express any definitive view on how it would rule on such a motion. The Court notes, however, that if and when Respondents move to modify the Release Order, they will need to satisfactorily explain why the following obstacles don't preclude the Court from granting that relief.

Because Respondents' 28-day deadline to file a motion to alter or amend the Final Judgment under Rule 59(e) has expired,[79] the only procedural mechanism for obtaining relief from the Final Judgment appears to be Rule 60(b), which authorizes a court to "relieve a party . . . from a final judgment" on various grounds.[80] "The general rule"—at least in the Fifth Circuit[81]—"is that a change in decisional law . . . cannot alone be grounds for relief from a final judgment pursuant to Rule 60(b)."[82] "That principle reflects that the interest in getting the law 'right' must sometimes give way to an even stronger interest in finality."[83] "[I]f a 'change in

---

[77] *See* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made *by motion*." (emphasis added)); *see also infra* notes 79–91 and accompanying text (discussing Rule 60(b)).

[78] Release Order at 6 ("Respondents may not re-detain Petitioner under the authority of 8 U.S.C. § 1225(b)(2)(A) unless they first successfully *move* to modify this Order." (first emphasis omitted; second emphasis added)).

[79] "A motion to alter or amend a judgment" under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). The Court issued its Final Judgment in this case on August 5, 2026, *see* Final J., so Respondents' deadline to file a Rule 59(e) motion expired on September 2, 2026. Respondents didn't file a Rule 59(e) motion by that date. *See supra* note 18 and accompanying text.

[80] FED. R. CIV. P. 60(b).

[81] *See Crutsinger v. Davis*, 588 U.S. 941, 941 (2019) (Sotomayor, J., respecting the denial of certiorari) (noting a potential circuit split on that issue).

[82] *Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 913 (5th Cir. 2019) (citation modified).

[83] *Id.*

law' automatically allowed cases to be reopened," then lower courts "would have to restart long-resolved cases" every time a higher court issued a decision that altered the applicable legal rules.[84] Although the Fifth Circuit has contemplated that "there may be situations where a change in decisional law combines with other factors to tip the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts," "[i]t is not apparent" that the Fifth Circuit has "ever found such a situation."[85] Thus, if Respondents ultimately move for relief from the Release Order based on the intervening *en banc* ruling in *Sosnava Rodriguez*, they'll need to convincingly explain why the foregoing principles don't foreclose that relief.

Additionally, a "Rule 60(b) motion is not to be used as a substitute for appeal."[86] When the Court issued its Final Judgment in this case, the Fifth Circuit had granted *en banc* rehearing in *Sosnava Rodriguez*, but hadn't yet issued its *en banc* ruling.[87] So, if Respondents thought this Court erred by following the vacated panel opinion in *Sosnava Rodriguez* as persuasive but non-binding authority,[88] they could have appealed the Final Judgment. They could have then asked this Court and/or the Fifth Circuit to stay the Final Judgment pending that appeal and the

[84] *Id.*

[85] *Id.*

[86] *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981).

[87] *Compare Sosnava Rodriguez En Banc Reh'g Order*, 181 F.4th at 609 (granting *en banc* rehearing on July 10, 2026), *with* Final J. (dated August 5, 2026), *with Sosnava Rodriguez En Banc Op.*, 2026 WL 3181188 (issued October 23, 2026).

[88] *See supra* Section I.C.

forthcoming *en banc* ruling in *Sosnava Rodriguez*[89]—and, given the Fifth Circuit's stay rulings in similar cases, the Fifth Circuit probably would have granted it.[90] Then, once the Fifth Circuit released its *en banc* opinion, it could either reverse this Court's judgment or remand for further consideration in light of *Sosnava Rodriguez*.

But Respondents never appealed the Final Judgment, and their deadline to do so expired weeks ago.[91] Thus, if Respondents file a Rule 60(b) motion for relief from the Release Order, they'll need to satisfactorily explain why that motion isn't an impermissible substitute for the appeal that they could have filed (but didn't).

---

[89] *See* FED. R. APP. P. 8(a)(1) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal . . . ."); FED. R. APP. P. 8(a)(2) (providing that a motion to stay a judgment pending appeal "may be made to the court of appeals or to one of its judges" if "moving first in the district court would be impracticable" or "the district court denied" the requested stay).

[90] *See, e.g.*, On Motion for Consideration at 3, *Tolentino-Rodriguez v. Blanche*, No. 26-20424 (5th Cir. Aug. 27, 2026), ECF No. 32-1 (granting, in an appeal of a similar release order, a stay pending appeal and a motion to stay the case pending the *en banc* decision in *Sosnava Rodriguez*).

[91] *See supra* note 17 and accompanying text (explaining that Respondents' appeal deadline expired on October 5, 2026).

### C. Petitioner's Other Requests for Relief

As noted, Respondents failed to explicitly address Petitioner's request that the Court order Respondents to:

(1) "correct their records to reflect that Petitioner's removal is not administratively final;"

(2) withdraw the procedurally irregular OSUP and Warning "and issue release conditions no more restrictive than those in place before October 13, 2026;" and

(3) "direct Respondents to notify Petitioner's counsel within twenty four hours of any future detention of Petitioner, and to identify the statutory authority for that detention."[92]

Because Respondents haven't directed the Court to any authority suggesting that it would be unlawful for the Court to award that relief, the Court will grant those requests as unopposed.[93] Withdrawing the OSUP will resolve Petitioner's concern about not receiving the OSUP's missing fourth page, as well as her concern about how to comply with the OSUP's electronic monitoring requirement after the agency took away her ankle monitor.[94]

---

[92] *Compare* Notice at 7–8, *with* Resp. Mot. at 1–6. *See also supra* notes 66–67 and accompanying text.

[93] *Cf.* W.D. TEX. CIV. R. 7(d)(2) (authorizing the Court to grant a motion as unopposed if the opposing party doesn't respond to it by the applicable deadline).

[94] *See supra* Section I.F.

## III. CONCLUSION

The Court therefore **GRANTS** "Petitioner's Emergency Motion to Enforce Order Granting Petition for Writ of Habeas Corpus" (ECF No. 12), as modified by "Petitioner's Notice of Release and Partial Withdrawal of Emergency Motion to Enforce Order Granting Petition for Writ of Habeas Corpus" (ECF No. 14), **IN PART** as follows:[95]

The Court **FINDS** that Respondents violated the Court's "Order Granting Petition for Writ of Habeas Corpus in Part" (ECF No. 8) by re-detaining Petitioner on October 13, 2026.

The Court **REAFFIRMS** its prior ruling that "Respondents **MAY NOT** re-detain Petitioner under the authority of 8 U.S.C. § 1225(b)(2)(A) unless they first successfully move to modify" the Court's "Order Granting Petition for Writ of Habeas Corpus in Part" (ECF No. 8).[96] Any motion to modify that Order must address the legal issues identified above.[97]

---

[95] To the extent the Notice asks the Court to "maintain the October 19, 2026, deadline for Respondents' response" to the Emergency Motion, Notice at 7, the Court **DENIES** the Motion **IN PART**. The Court postponed that briefing deadline to October 29, 2026 in a prior Order. Order at 1–2.

To the extent the Notice asks the Court to direct Respondents to take various actions "before . . . November 3, 2026," Notice at 7, the Court **DENIES** the Motion **IN PART** because that date has already passed.

Finally, to the extent the Notice asks the Court to "direct Respondents also to identify any statutory authority on which they contend Petitioner's October 13, 2026, detention rested," *id.*, the Court has already done so, Order at 2 (ordering Respondents to "brief the live issues that Petitioner identifie[d] in" the Notice (emphasis added)), and Respondents have complied, Resp. Mot. at 4 ("Respondents did not detain Petitioner under 8 U.S.C. § 1225(b)(2)(A). Respondents had detained Petitioner under 8 U.S.C. § 1231(a)(2)(A) . . . .").

[96] Release Order at 6.

[97] *See supra* notes 79–91 and accompanying text.

Although nothing in this Order (or the Release Order) forbids Respondents from re-detaining Petitioner under the authority of 8 U.S.C. § 1231(a)(2)(A), they may do so **ONLY IF** all legal preconditions for detention under that provision have occurred. That includes, at minimum, that Petitioner's removal order be administratively final.[98]

By **December 2, 2026**, Respondents **SHALL** take the following actions and file documentation evidencing that they've done so:

(1) correct all applicable agency records to reflect that Petitioner's removal order is not yet administratively final;[99]

(2) withdraw the Order of Supervision (Form I-220B) and Warning (Form I-229B) that Respondents provided Petitioner on October 13, 2026;

(3) issue release conditions no more restrictive than those in place before October 13, 2026; and

(4) provide Petitioner and her counsel a complete copy of those conditions.[100]

---

[98] *See* 8 U.S.C. § 1231(a)(1)(B)(i).

As before, "[n]othing in this Order prohibits the Government from re-detaining Petitioner under 8 U.S.C. [§] 1226(c) . . . or another similar source of statutory authority" if doing so would comport with the Court's Orders and all applicable law. Release Order at 6 n.18.

[99] Obviously, if and when Petitioner's removal order *does* become administratively final, Respondents may update their records to accurately reflect that.

[100] Notice at 7–8; Reply at 9.

If Respondents re-detain Petitioner in the future, they **SHALL**:

(1) notify Petitioner's counsel within 24 hours after detaining Petitioner; and

(2) identify the statutory provision(s) authorizing that re-detention.[101]

**So ORDERED and SIGNED this 17th day of November 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[101] Notice at 8.